## ED. VANN v. STATE.

No. A-3538—Opinion Filed April 25, 1921.

(197 Pac. 182.)

(Syllabus.)

**HOMICIDE—Murder—Life Sentence—Sufficiency of Evidence.** In a prosecution for murder. evidence examined and considered, and held to sustain a verdict of guilty of murder, with imprisonment for life as the punishment.

*Appeal from District Court, Creek County;*

*Earnest B. Hughes, Judge.*

Ed Vann was convicted of murder, and he appeals. Affirmed.

*F. W. Jacobs,* for plaintiff in error.

The Attorney General and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, Ed Vann, herein referred to as the defendant, was by information charged with the crime of murder, committed by shooting Augustus Joseph in Creek county, on or about the 19th day of June, 1918. He was duly arraigned, and upon a plea of not guilty he was tried, convicted of murder, and his punishment assessed at imprisonment for life in the penitentiary. From the judgment rendered in accordance with the verdict he appeals.

No brief has been filed, and we have not been favored with an oral argument in behalf of the defendant. The grounds of the motion for a new trial, and assigned as error in the petition, question the sufficiency of the evidence to sustain the verdict.

A substantial statement of the testimony of each witness who testified in the case is as follows:

Andrew Ferguson testified:

"I live in Creek county near Edna, within hallooing distance from the house of Augustus Joseph. The old man lived in a log house. His son lived with him, also a granddaughter. At the time of the homicide the defendant, Ed Vann, was staying there. The evening old man Joseph

was killed I was on my way to church, and I noticed that the old house where old man Joseph kept his mules was on fire. I went to the tent, where his boy generally stayed, and no one was there, so I called to the house, and no one answered. Then I went down to the old house and looked in. Old man Joseph was lying on the floor dead. The house overhead was burning. I called, whooped, and hallooed, and no one answered. Then I head a noise like horses running behind the old house to the north, and I called again, and did'nt get any answer, so I went to the church about one-half mile north, and notified the people, and five came back to the fire with me. We found Clem Dixon and the defendant there. They had taken the body out of the house. Then we phoned to Beggs for the officers, and they came, and we questioned the defendant, and he said that he went for the mules that evening, and left two oil men at the house in close conversation with the old man. He said one of the men had on a blue serge suit and a straw hat, and his clothes seemed to be dirty with oil, and the other man had a blue overall suit on and a cap. We found a shotgun shell lying near the house, and asked the defendant where it came from. He said early that morning he shot a chicken for breakfast. The shell and the wadding seemed to be perfectly dry, and it had rained off and on that day until about 4 o'clock. There was seven or eight bales of hay upstairs in the old stable. I was present when the officers searched old man Joseph's house. They found a double-barrel shotgun and a Winchester rifle. Old man Joseph had been shot in the neck with a shotgun. The only stock the old man had was a pair of mules."

Clem Dixon testified:

"I live north of old man Joseph's house, about half a mile, near the church. That day between sundown and dark the defendant passed my place, going west in a wagon. He was riding with my brother-in-law, coming from church. About an hour later I was at Gus Hallibut's, not quite half a mile north from where old man Joseph lived. The defend-

ant, riding a mule and leading another, came up and said, 'I believe our house is afire.' We got up and went out to where he was. He said, 'Get on one of the mules and ride. I got on one of the mules and we rode as hard as we could go, and down about the field he said, 'There is nothing but that old house burning.' We went on, and when we got there I started towards the fire. He said, 'There ain't nothing out there to hurt about.' I heard some chickens, and I said, 'There are some chickens in there.' I went and looked in the old house. The fire was overhead, and I saw old man Joseph lying there. I called him, but he did not answer, so I grabbed hold of him to pull him out. He was so heavy I didn't pull him the first pull, so the defendant helped me pull him out of the house. I looked around, the old man's hat was lying out near the house they lived in, I said, 'I believe this old man was shot, and somebody dragged him in this old house, aiming to burn him up.' He said, 'Yes; that is about it.' So I began to halloo. He said, 'You reckon if we would shoot they would come any faster?' I said, 'Yes; I believe they would.' He went into the house and got a Winchester, and comes out the door and shoots straight up. Then it was not long before people began to gather."

Aban Scott testified:

"I live 10 miles southwest of Beggs. Old man Joseph lived about half a mile southwest of me on the same place. The defendant passed my place in a wagon with Clem Dixon's people before sundown the night old man Joseph was killed. He hallooed to me, and asked me for my wagon. That night after services had started at the church he came back, riding a mule. He said: 'I stayed a long time, didn't I? Do you reckon I will get to church in time for services?' I said, 'I reckon it will be over by the time you get there.' He said, 'I would have made it back sooner, but I had to go into the bottom to look for these mules; where do you reckon I found them?' I said, 'Where?' He said, 'I found them in the school yard; furthermore, I guess you know

one thing—Mr. Joseph sure had a lots of company at home.' My little children asked him who were there, men or women. He said, 'Men,' and they said, 'Who were the men?' He said, 'Oil men.' Well, he rode on a little piece further, and said, 'Look here; I see a light down there in your field.' I said, 'I guess it is an automobile light.' He said, 'You come here; it is somebody's house; come and look.' Well, we looked, and he said, 'Don't you believe that is somebody's house?' The children said, 'Ed, do you suppose that is your old house?' He said, 'I will go on back.' I said, 'there is harness there in that barn?' He said, 'Oh, no; I will go back; I wonder where poor old man Joseph is at.' He went back, hallooing fire, towards Gus Hallibut's house. I went on behind him, and when I got there they had the old man out. The fire was on his clothes; his pants were burned; there was a gunshot wound in his neck, and some shot in his jaw. I said to the defendant, 'Ed, bring that lantern here.' He said, 'I can't stand that,' and I said, 'What kind of a hole do you think that is on this old man?' He said, 'A bullet.' I said, 'No; this was a shotgun.' We all stepped back, and I said, 'Ed, where were the men you saw?' He said, 'Right where the old man sat, on this box.' I said, 'If you were to see these two men again, would you know them?' He said, 'I don't know; they would go off and disfigure themselves,' I said, 'Something is got to be done about this.' He said, 'They are gone, long gone. One had a blue overall suit on and a cap, and the other had a navy blue suit and a straw hat on.' I said, 'Well, do you suppose they are down in the bottom?' He said, 'They are done gone.' I said, 'Did they have any gun?' He said, 'I didn't see any gun; if I would say they had a gun I would tell a lie.' I said, 'Maybe they got his gun and shot him.' He said, 'No; there wasn't but one shell on the place, and I killed a chicken with it this morning.' I examined the tracks; there were two mule tracks straight across the field from old man Joseph's house to my house. Ed Vann, the defendant, and old man Joseph were cropping together that year, and the defendant lived with old man Joseph."

Gus Hallibut testified:

"I live about 700 yards from the place of the killing. Old man Joseph had a pair of mules. On the day he was killed his mules were near my house. Between 6 and 7 o'clock that evening I heard old man Joseph calling the mules, and they went towards his house. A couple of hours later I heard a gunshot. It went off like it was shot in a hollow tree. About a half hour later, when they commenced hallooing, I went over to Joseph's place. When I got close I saw a fire, and I found Ed Vann, the defendant, and Clem Dixon there. The old man was lying there dead, with a gunshot wound in his neck and a few shot entered his face."

Edward Dawson testified:

"I live near Edna. I was walking the half section line, going to church, about a half an hour by sun, and saw old man Joseph sitting near the fence in his yard. No one else was there. Andrew Ferguson came to the church with the news about the killing. It must have been about an hour later, I guess. I went back, and the old man was lying dead, not far from the door of the old barn, and I told them they had better pull the body a little further from the fire."

Frank Joseph testified:

"My age is 21 years. August Joseph was my father. I went to a supper the night before the day of the killing. The defendant, Ed Vann, started from home with me. Before we left he asked my father for some money. My father told him he had some money, but he wanted to keep it to clean up the crop; that Monday he was going to buy some groceries, and later in the week he would go to town and get some money and let him have some. The defendant said, 'All right,' and we started across the field. He said, 'I am getting tired of this way of doing.' I said, 'How is

that, Ed?' He said, 'I am going to leave before long an I
I am liable to get somebody before I leave.' I said, 'Ed, I
would not do that; you know how it is when a fellow is in
trouble; it is hard to get out.' He said, 'Yes, but I know
my business.' We went on to Gus Hallibut's, and stopped
there. The next morning I stopped a few minutes at home.
about 9 o'clock. My father had a Winchester rifle and a
12-gauge shotgun. There was only one load, and it was in
the shotgun. It had No. 6 shot. My niece was up at Ab
Scott's home that day. My father and Ed never had any
trouble that I know of."

Andrew Ferguson, recalled, testified:

"While I was milking that evening about dusk, I heard
a gun fire, and it was about two hours after that, on my
way to church, that I discovered the fire."

Clem Dixon, recalled, testified:

"The next day we measured the tracks of the mules.
We rode from Hallibut's to the old man's house. The
tracks from there went angling across the field to Ab
Scott's. They were the same mule tracks."

F. L. Garrison testified:

"I live at Beggs. I am constable in Okmulgee county,
The night Augustus Joseph was killed I was called out
there. When we got there it was about 11 o'clock. I talk-
ed to the defendant. He said he left the place just a few
minutes before old man Joseph was killed; that he went to
the pasture for the mules, and saw a fire over here, and he
and another fellow came back. The other fellow jerked the
door open, and found old man Joseph lying dead in the
barn. He also said that he heard some shots that evening
and that old man Joseph had shot a chicken that morning
with his shotgun. I examined the shotgun, and found that
it had been freshly fired. I examined the shell picked up
in the yard, and it was dry. It had rained that day. There

was a pool of blood where the old man was shot. He was sitting out in the yard, the mark of the chair was there where he fell over, and his hat was bloody. 'There was a trail, showing that something had been dragged from there to the barn. I arrested Ed Vann that night, and brought him to Beggs and turned him over to the officers of Creek county. The next day, I, with the sheriff, examined the place and found the tracks of two mules leading from Joseph's house northeast, almost in a direct line to Gus Hallibut's place, and in the direction of Ab Scott's place. The tracks showed that the mules were running. I also found tracks going back that corresponded with those going towards Hallibut's house."

When the state rested, the defendant demurred to the evidence, and asked the court to direct a verdict, which the court refused to do. The defendant did not offer any evidence.

The record is voluminous, but the foregoing sufficiently indicates the nature and character of the testimony developed at the trial.

We have carefully read all the testimony, and upon the undisputed facts and circumstances which evidence shows we cannot resist the conclusion that the verdict was fully warranted by the evidence, and, in our opinion, no other verdict could have been reached upon a dispassionate and intelligent consideration of the evidence in the case. A consideration of the whole record discloses no reversible error, and, accordingly, the judgment of the trial court must be, and is, affirmed.

MATSON and BESSEY, JJ., concur.